Filed 6/24/14  In re N.C. CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re N.C. et al., Persons Coming Under the Juvenile Court Law. | |
| DEL NORTE COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.B.,<br><br>Defendant and Appellant. | A140027<br><br>(Del Notre County<br>Super. Ct. Nos. JVSQ13-6017,<br>JVSQ13-6018) |

J.B. (Mother), mother of N.C. and M.C. (the Twins), born in January 2007, appeals from orders at the six-month review in the Twins' dependency cases, which continued the Twins in the custody of their father, D.C. (Father), and granted in part and denied in part Mother's Welfare and Institutions Code section 388 petition to change the court's dispositional orders.

We recently decided Mother's appeal from the dispositional orders.  (*In re N.C.* (A138503, May 6, 2014) (nonpub. opn.).)  As stated in our prior opinion:  "The Twins are subjects of a custody dispute in marital dissolution proceedings between Mother and Father.  Mother accuses Father of sexually molesting the Twins, and at one point she absconded with them.  The court determined in these dependencies that the Twins would

1

be safe with Father pending further investigation into the family's circumstances and the allegations against him." (*Id.* at p. 1.)

The length of Mother's latest briefs notwithstanding, there were no particularly significant developments between the dispositional hearing and the six-month review. Most notably, the court had not yet received the custody assessment from Dr. Jacqueline Singer, which, as noted in our last opinion, was to be the basis for detailed planning in the cases. The record does not substantiate Mother's current claims of error, so we affirm the orders issued at the six-month review.

## I. BACKGROUND

At the conclusion of the April 12, 2013 dispositional hearing, county counsel advised the court that Mother had filed a lawsuit in federal court "against just about everyone involved in this case." The court set a hearing for May 10 to consider the county's request to release transcripts of hearings in the Twins' cases to defense counsel in the federal action. At the May 10 hearing, the county withdrew it request to disclose the transcripts, and the court granted a request by the Twins' counsel to retain psychologist Michael Ramirez to assist with the Twins' representation.

An interim review hearing was held in this case on June 28. The Department's report for the hearing recommended continued family maintenance services to Father and reunification services to Mother. The report stated that Mother "still brings in too many 'things' (i.e., snacks, toys dress up clothes, activities) for the children during visits." Mother also made comments during the visits the Department considered inappropriate, such as saying on April 8, "Hopefully my attorney will be able to help Mom get you back soon so you can come home." On May 9, Mother told the twins they could tell her if they had secrets, and N.C. asked "Even if they are lies?" Mother answered: "Yes, even if they are lies daddy is telling you about mommy." On June 3, Mother asked M.C., "Do you have something to say? Will you tell me? Will you tell [the visitation supervisor]? Can I ask what you are scared of telling me or I mean in front of someone else? Is it because you only trust me?"

The Court Appointed Special Advocates (individually and collectively CASA) for the Twins also recommended that they remain in Father's home and continue to have supervised visits with Mother. The CASA report stated that the Twins "never discussed any form of abuse by either parent nor did they ever appear to be fearful of [Father]. When returning from CASA outings, the girls ran to their Father for hugs." The Twins' teacher reported that they were " 'deeply affected' " by their two weeks in foster care at the outset of the case, but that they were " 'just now back at their educational level.' "

At the June 28 hearing, the court ordered Mother to bring only one grocery or shopping bag "full of toys or whatever it is you think you need to bring for the kids" at visits, "because the visits should be an opportunity for you to relate to your kids and not be Santa Claus . . . ." Mother asked that visits be increased from five to ten hours per week, the Department opposed the request, and the court denied it "without prejudice."

On September 20, Mother filed a wide-ranging petition seeking modification of prior orders under section 388. Her requests included: modification of visitation; modification of the case plan to among other things "[c]larif[y] the scope and purpose" of Singer's evaluation, and appoint Dr. Ramirez, the psychologist identified by the Twins' attorney, to do "an independent child abuse evaluation"; permission to video or audio record her visits with the Twins to eliminate "the constant 'he said/she said' allegations between the Department case worker and Mother"; and "[c]onsideration of a transfer of supervision of this case to Humboldt County" "to eliminate the potential for the Department's decisions regarding Mother's case plan and visitation with the children to be influenced by the pending civil lawsuit." The petition stated that Singer was communicating more frequently with Father than Mother, and alleged that Singer might be biased against Mother.

Mother supported her petition with a detailed declaration stating, among other things: that case worker Ward had a "dismissive attitude towards me" and was "[a]t times . . . openly hostile which I believe is because of the general bias the Department of Social Services has against me and in favor of [Father]"; that the Department and Julie Cain, Ward's supervisor and Father's close personal friend, were defendants in her

3

federal lawsuit; that Ward "smiled and winked" at Father when he walked out of an April mediation after saying, " 'I will never work with [Mother] and I will never allow her near my children' "; that Ward prohibited her from talking to the Twins about their health or school activities; that she was also prohibited from attending the Twins' school functions, and from talking to them on holidays and their birthday; that she enrolled in a parenting class in Humboldt County in part because "it seems that the coordinators and/or instructors [in the local program] are all associated with [Father's] family in some way."

The Department and Father opposed Mother's petition. The Department among other things denied telling Mother what she could discuss with the Twins. The Department stated that Ward was being supervised in the Twins' case by Crystal Markytan, not Julie Cain, and that neither Ward nor Markytan were defendants in Mother's federal suit. Father argued among other things that there were no changed circumstances justifying Mother's petition, and that the petition "is the latest example of her continued scorched earth approach to blame everyone else for the position in which she currently finds herself. She files an appeal and a federal lawsuit related to this case and now uses that fact as a basis for challenging the objectivity of everyone involved."

The Department's report for the October 11 six-month review recommended maintenance of the status quo. The Department "believe[d] that due to a lack of services offered to [Mother] during the first six months of the case while awaiting Dr. Singer's assessment, that it would be unfair to her and the girls to recommend dependency be dismissed." The Department was concerned that Mother might have a personality disorder, and recommended that she have a mental health evaluation. The Department continued to elaborate on its concerns about Mother's visits with the Twins, saying, for example: "[Mother] does not say anything bad about [Father] or his support people directly, but will say subtle, passive things that it appears the girls understand; such as when she asks the girls if their dad throws away the toys and clothes she sends home with them . . . ." However, the Department praised Mother's parenting skills, and noted that she "never gets angry or frustrated with the girls and allows them to express themselves, whatever they have to say."

4

CASA's report for the review hearing also recommended that the Twins remain dependents in Father's custody. CASA "had multiple opportunities to visit the girls at their home with [Father]. . . . [Father] provides a very loving and orderly home. This five bedroom farm, two story home, is neat and kid friendly, with one room filled with toys and a trampoline." Father and the paternal grandmother, who lived nearby and was involved in the Twins' daily care, "both provide the girls with an abundance of love, support and a consistent routine and steadiness. This placement clearly appears to be a stable and structured home that is meeting the girls' daily needs." CASA recommended that Mother continue to have supervised visitation, and hoped that the visits could eventually take place in Mother's home. Having observed a visit in September, CASA "support[ed] the Department's concern that there is still an amount of implication by [Mother] that there is 'something wrong' or something the girls need to 'tell' mom while on visits." CASA believed that "returning these girls to full custody of their mother would jeopardize these girls significantly."

At the October 11 hearing, the court noted that "[n]othing has changed since jurisdiction was found," and acknowledged that "we don't really have a case plan in place" pending Dr. Singer's report. Mother's counsel advised that she had spoken with Singer after filing the section 388 petition and was "satisfied" with Singer's responses to Mother's concerns. The court said, "This shouldn't be a 300 case. I want to make an exit order where both parents have shared custody. But I got to feel that it's safe for the children to do that." Mother's allegations of bias were "get[ting] in the way." The court also told Mother to "stop asking the kids if there's something wrong every time. You're going to make them nervous wrecks."

The 388 petition was the principal focus of the hearing. Mother requested that her visits with the Twins be moved from the Department to the Family Resource Center, the Department had no objection, and the court granted her request. CASA agreed to attend some of the visits. The court denied Mother's requests for more hours of visitation, reimbursement of travel expenses to attend the Humboldt County parenting class, and transfer of the case to that county. Mother denied recording conversations with the case

5

worker, and agreed with CASA that she could not record visits at the Family Resource Center, but the court told her "You can take all the pictures of the kids you want."

The court ordered the parties into mediation. Mother and Father agreed to participate, but Father's counsel stated that Father "doesn't want to be in the same room with [Mother]." The court responded, "Can we start on the same planet? Is that all right? Are you willing to do that?" Father replied that he agreed to mediate, "I just will not be in the same place with her." Mother's counsel argued, "[T]here needs to be some sort of accountability for father so that we get to where this case needs to be so that the parents can work together. And that's going to include mom and dad being in the same room talking about what's best for their kids." The court responded, "At some point, yeah, you're right," and told Father "to keep in mind . . . if it turns out you're not cooperative and you're not doing what's in the best interest of the kids, then the Court is going to have to . . . make a decision that you won't like." CASA volunteered to participate in the mediation, "at least to start." The court welcomed CASA's participation "because I'll get an objective report."

Earlier in the hearing, when the Department agreed that Mother could begin attending the Twins' school functions, Father addressed the court saying, "My experience for the last four years has been mother has only been detrimental to [the Twins] in every way, shape or form." The court responded, "I have to work toward reunification. This is a really expensive case to be babysitting two adults. . . . [¶] . . . [¶] And some of it is going to . . . require taking some risk and some of it is going to require just every once in a while just chewing on your own bile, so to speak, because he's not going to be happy, the father is not going to be happy with it; mother is not happy with anything I've done so far. So—but I have to overlook that and keep trying to move forward."

The court adopted the Department's recommendations, including that of a mental health assessment for Mother, but stated that the assessment could wait until after receipt of Dr. Singer's report. The court set an interim review hearing for November 22.

## II. DISCUSSION

Mother's threshold argument is premised upon our reversal of the dispositional orders she challenged in her prior appeal. She argues that if we reversed those orders, then we must reverse the orders issued at the six-month review. But we affirmed the prior orders. This argument fails.

Mother also contends that current orders must be reversed because the court "considered and relied upon substantial factual and legal misrepresentations made by the Department." Such alleged misrepresentations include: statements in the Department's six-month review report and opposition to the 388 petition that the sexual abuse allegations in the dependency petitions were determined to be "unfounded"; a statement in the six-month report that investigations had "proved" the Twins' sex abuse allegations were "untrue"; and a statement by counsel for the Department at the six-month review hearing that the Department's investigation of the abuse allegations was "inconclusive." Mother argues these characterizations are false because the court actually sustained the petitions' sexual abuse allegations.

But as we noted in our prior opinion, the abuse allegations were sustained inadvertently. The Department's jurisdictional report recommended those allegations be dismissed, but proposed jurisdictional findings that sustained them. Although the court made the findings as proposed by the Department, the court unambiguously stated at the jurisdictional and dispositional hearings that it was not persuaded any sexual abuse had occurred. The court reiterated that point at the six-month review, saying, with respect to sexual abuse, "I haven't been persuaded that this happened." It made the point again when Mother's counsel argued the Department had misrepresented that the sex abuse allegations were unfounded. The court said that it found Mother's witnesses at the jurisdictional hearing "very unpersuasive. . . . The testimony was stilted and not persuasive. And I don't think that—I did not find it [sex abuse] to be true. If I said that in the recital, it's not correct." Thus, the Department properly characterized the sex abuse allegations as "unfounded," "untrue," or "inconclusive."

7

Another of the court's alleged misconceptions concerned the circumstances of the Twins' return to Father's custody before the jurisdictional hearing. At the six-month hearing, the court recalled that there had been an "emergency" "telephonic hearing" at which Mother "was represented. And everybody else was on the phone." But that may not have occurred. As stated in our prior opinion, a court officer wrote a memo to the file saying that she had called the judge, and told him the Department had determined that the allegations of sexual abuse were unfounded and wanted the Twins returned to Father's custody. The court responded that it would conduct a telephone conference about the return if the Twins' counsel had concerns, but counsel agreed to their return. Insofar as it appears from the record, the Twins were returned to Father before the jurisdictional hearing without any conference. But as we previously explained, any error in returning the Twins to Father at that time was harmless because the abuse allegations were fully aired at the jurisdictional hearing held only a week later. For the same reason, any faulty recollection of the judge at the six-month hearing about the circumstances of the Twins' return was also immaterial.

As in the first appeal, Mother seizes on an isolated comment by the court to claim that the court improperly "relied upon its own speculation and matters not presented to it as evidence" in making its rulings at the six-month hearing. When Mother's counsel argued that Mother was justified in questioning the Twins about any problems they were having when they were "irritable or just not themselves" at visits, the court responded: "Well, CASA's report and social services indicates that she questions the children until she wears them out. And . . . they adopt what she says. . . . I've gone through the 80s where they had, you know, these large sex molestation cases with 35 defendants. And I read a lot about this kind of questioning where you just wear a kid out and, finally, they just want to go along with it. That's why defendants confess. You know. You're a criminal lawyer. They just confess because they want to go along with what the police say. This is worse because they're . . . six years [old]. It's a real danger."

Our response to Mother's objection to these remarks is the same as before. Triers of fact inevitably and appropriately bring their experiences to bear on the issues. (*People v. Steele* (2002) 27 Cal.4th 1230, 1267.) There was no impropriety.

Mother singles out denial of her request to transfer the case out of Del Norte County as error in denying her 388 petition. Her request was based primarily on the claim that Mother's federal lawsuit would bias the Department against her in the Twins' cases. The court could reasonably find the allegations of potential bias were speculative, and insufficient to warrant transfer of the case. Moreover, the social worker and supervisor assigned to the case are not defendants in the federal action. No abuse of discretion appears.

Mother argues that the court had no substantial evidence from which to conclude that return to her custody would be detrimental to the Twins. But the CASA's report for the six-month review opined that returning the Twins to Mother "would jeopardize [them] significantly."

## III. DISPOSITION

The orders at the six-month review are affirmed.

_____
Siggins, J.

We concur:

_____
McGuiness, P.J.

_____
Jenkins, J.